IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STERLING SERVICE GROUP, INC.,
NORTH EAST CERTIFIED PARTS DISTRIBUTION,
LLC, and PINNACLE APPLIANCE CARE, LLC,

                    Plaintiffs,                          OPINION and ORDER

        v.
                                                         25-cv-281-jdp
SUB-ZERO, INC., WOLF APPLIANCE, INC.,
COVE APPLIANCE, INC., and
ASKO DISTRIBUTION NORTH AMERICA, LLC,

                    Defendants.

---

This dispute arises from the termination of contracts to provide service and parts for high-end kitchen appliances. The defendants are four affiliated companies who make kitchen appliances: Sub-Zero, Inc., Wolf Appliance, Inc., Cove Appliance, Inc. and ASKO Distribution North America, LLC. Two of the plaintiffs, Sterling Service Group, Inc. and North East Certified Parts Distribution, LLC, had for years worked with Sub-Zero and Wolf Appliance: in Chicago, Atlanta, and New York/New Jersey, Sterling repaired their appliances, and North East sold parts for them.

For reasons that aren't clear at this point in the case, the relationship soured in 2021. The parties had discussed having plaintiff North East and another company affiliated with plaintiffs, Pinnacle Appliance Care, LLC, provide service and parts in Brooklyn, New York. But Sub-Zero and Wolf Appliance terminated all their contracts with Sterling and North East before those discussions came to fruition.

Plaintiffs contend that, by terminating their contracts, defendants violated the express terms of the contracts and the implied covenant of good faith and fair dealing. Plaintiffs also

contend that they relied on defendants' promises about the Brooklyn territory to their detriment. Plaintiffs bring claims for breach of contract and promissory estoppel.

Defendants move to dismiss plaintiffs' amended complaint, contending that it fails to state a claim upon which relief may be granted. The court will grant their motion in most respects. Plaintiffs may proceed only with their promissory estoppel claim regarding defendants' promise that Pinnacle and North East would serve the Brooklyn territory.

BACKGROUND

The court draws the following allegations from plaintiffs' amended complaint, Dkt. 17, and the documents attached to it, accepting the allegations as true for the purpose of defendants' motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[1]

Sterling and Sub-Zero's working relationship began almost thirty years ago in Chicago, Illinois. Sterling established a service program in Chicago by recruiting and training technicians to repair Sub-Zero's appliances. In 2004, Sub-Zero asked Sterling to open an office and service provider network in Atlanta, Georgia, using the same business plan as the Chicago territory. To do so, Sterling relocated trained technicians from Chicago to Atlanta. Then, in 2013, Sub-Zero asked Sterling to operate a service company and parts distributor in New York/New Jersey. Sterling used the same business plan to establish a service program there too. This case largely involves Sub-Zero's territory in Brooklyn, New York.

---

[1] The court may consider the documents attached to plaintiffs' amended complaint without converting defendants' motion to dismiss into one for summary judgment because the documents are part of the pleading. Fed. R. Civ. P. 10(c); *see Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

In the summer of 2020, Sub-Zero approached Sterling about establishing a service program in the Brooklyn territory. Sub-Zero's national field service manager told the owner of Sterling, Brian Swanlund, that Pinnacle would be a "Premier Service Partner" for the Brooklyn territory, and North East would sell parts for the territory. Dkt. 17, ¶ 64.[2] In late 2020 and early 2021, the parties discussed the specifics. The following is a summary of those discussions:

- In September 2020, Sub-Zero sent Sterling an email message asking it for its business plan for the Brooklyn territory. *Id.*, ¶ 66;

- In November 2020, Pinnacle sent Sub-Zero its plan, which (1) indicated that Swanlund had secured an apartment in Brooklyn, planned to visit local dealers daily, and would build a staff of technicians for the territory; (2) requested a three-year contract from Sub-Zero; and (3) set a target launch date for the plan of June 1, 2021. *Id.*, ¶¶ 67–76;

- In mid-November 2020, Sub-Zero invited plaintiffs to a meeting to discuss "the New York Market, Brooklyn expansion, and New agreements in 2021." *Id.*, ¶ 79 (cleaned up);

- In April 2021, Sub-Zero sent Sterling an email message asking it for an "update on how [Sterling] [was] progressing in [the] preparation for the Brooklyn market." *Id.*, ¶ 80;

- The same day, Sterling responded that it would meet its "June 1st target with a full complement of techs and resources." *Id.*, ¶ 81;

- The same day, Sub-Zero replied: "Great stuff! If you feel comfortable starting prior to June we can accommodate that . . . . 3 year contracts are in the future at some point. When? Not for sure." *Id.*, ¶ 83;

- In mid-May 2021, Sub-Zero sent Sterling an email message "checking in to see if all is well with the Brooklyn transition" and asking if plaintiffs were "still good for a June 1 launch?" *Id.*, ¶ 84;

---

[2] It isn't clear how the plaintiffs relate to one another. Sterling, North East, and Pinnacle are separate companies. But the same individual, Brian Swanlund, is the owner or sole member of all three, *see* Dkt. 17, ¶¶ 3–5, which may explain why plaintiffs use the companies' names interchangeably in their amended complaint, *compare, e.g., id.*, ¶ 129 ("North East wired $102,339.09 to Sub-Zero to pay for parts."), *with id.*, ¶ 131 ("[A] 'large portion' of Sterling's wired payment would need to be refunded.").

- In late-May 2021, Sub-Zero sent Sterling an email message indicating that it would add Brooklyn zip codes to Sterling's account on June 1, 2021. *Id.*, ¶ 85.

There is a gap in the amended complaint's timeline: plaintiffs do not say whether they launched their operations in the Brooklyn territory on June 1, 2021. On June 7, 2021, Sub-Zero and Wolf Appliance terminated all their contracts with Sterling and North East.

The court will discuss additional allegations as they become relevant to the analysis.

ANALYSIS

Plaintiffs assert two types of claims against defendants: (1) breach of contract claims regarding Sterling's and North East's contracts with Sub-Zero and Wolf Appliance; and (2) promissory estoppel claims based on defendants' promises regarding the Brooklyn territory and their promises regarding a building lease in the New York/New Jersey territory. Defendants seek dismissal of plaintiffs' claims, contending that their amended complaint does not state a claim for relief.

On a motion to dismiss, the question is whether the plaintiff has stated a plausible claim for relief. *McCray v. Wilkie*, 966 F.3d 616, 620 (7th Cir. 2020). The plaintiff must present a story that holds together under the relevant law. *Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1028 (7th Cir. 2024). In doing so, a plaintiff may choose to provide more details than are necessary to satisfy Rule 8 of the Federal Rules of Civil Procedure. *Thompson v. Ill. Dep't of Pro. Regul.*, 300 F.3d 750, 753 (7th Cir. 2002). But a plaintiff runs the risk of pleading himself out of court if his in-depth account shows that he has no claim for relief. *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008).

## A. Preliminary issues

The court begins with three preliminary issues. First, plaintiffs attempt to bring breach of contract claims against defendants Cove Appliance, Inc. and Asko Distribution North America, LLC. Plaintiffs contend that Cove and Asko are proper defendants because they benefited from plaintiffs' contracts with Sub-Zero and Wolf. *See* Dkt. 26, at 4.[3] Specifically, Sterling was a service center for Cove and Asko, and North East was a distributor for them. *See* Dkt. 17, Ex. 4 and Ex. 5. But Cove and Asko are not parties to plaintiffs' contracts with Sub-Zero and Wolf, *see* Dkt. 17, Ex. 1 and Ex. 2, so plaintiffs cannot sue Cove and Asko for breaches of those contracts, *Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 651 (7th Cir. 2015). Even if Cove and Asko are third-party beneficiaries to the contracts, as plaintiffs contend, that would not give plaintiffs the right to sue them for breach of contract; instead, it would permit Cove and Asko to sue *plaintiffs* to enforce the contracts. *See Holbrook v. Pitt*, 643 F.2d 1261, 1270 (7th Cir. 1981). Plaintiffs have alleged no wrongdoing on Cove and Asko's part, so they don't belong in the case. Cove and Asko will be dismissed as defendants.

Second, the parties do not identify what state's law governs the contracts at issue. The parties acknowledge that either Wisconsin or New York law applies, but neither side conducts a choice-of-law analysis. *See* Dkt. 21, at 4 n.1; Dkt. 26, at 16 n.2. When determining choice of law in a diversity case, the court looks to the choice-of-law rules of the forum state, here Wisconsin. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014). Under Wisconsin choice-of-law rules, the court must apply Wisconsin law when the states' laws do not materially differ. *BB Syndication Servs., Inc. v. First Am. Title Ins. Co.*, 780 F.3d 825, 829 (7th

---

[3] Citations to filings from the docket use the page numbers assigned by CM/ECF, not the page numbers in the original document.

Cir. 2015). Defendants say that they are "unaware of any material difference in those states' laws for purposes of Plaintiffs' claims." Dkt. 21, at 4 n.1. Plaintiffs note that New York law might have a heightened pleading standard for promissory estoppel claims, but they say that difference is immaterial because their amended complaint satisfies either pleading standard. *See* Dkt. 26, at 16 n.2. The court will apply Wisconsin law because the laws of the two states do not materially differ. New York and Wisconsin law both require plaintiffs to allege that they relied on a sufficiently definite promise to their detriment to state a promissory estoppel claim. *See Advanced Trucking & Servs., LLC v. Hanover Ins. Co.*, No. 2021AP744, 2022 WL 2719712, at *2, 7 (Wis. Ct. App. July 13, 2022); *MatlinPatterson ATA Holdings LLC v. Fed. Express Corp.*, 87 A.D.3d 836, 841 (N.Y. App. Div. 2011).

Third, the allegations in plaintiffs' amended complaint are so vague that the court can't be certain about the makeup of the contracts that defendants terminated. Here's what the court can piece together regarding Sterling's contracts with Sub-Zero and Wolf Appliance:

- Sub-Zero and Wolf Appliance's termination notice to Sterling referenced "the Service of the Future Agreements, and any corresponding Service Agreements and Terms of Appointment." Dkt. 17, Ex. 4, at 1.

- Sterling says that its contracts typically took the form of "letter agreements" outlining the parties' obligations, and Sterling references a previous example of these letter agreements "regarding the Atlanta territory." Dkt. 17, ¶¶ 36, 40.

- Sterling also says that the parties "memorialize[d]" Sub-Zero and Wolf Appliance's boilerplate service agreement and terms of appointment, *id.*, ¶¶ 37, 43, which plaintiffs attached to their amended complaint as Exhibit 1.

Based on these allegations, the court infers that Sterling had multiple, territory-specific contracts with Sub-Zero and Wolf Appliance, and the contracts incorporated Sub-Zero and Wolf Appliance's boilerplate service agreement and terms of appointment as reflected in Exhibit 1. As for North East's contract with Sub-Zero and Wolf Appliance, plaintiffs allege that

a distributorship agreement has governed their working relationship since 2013, *id.*, ¶ 51, and they attach to their amended complaint as Exhibit 2 a distributorship agreement from August 30, 2013. The court infers that Exhibit 2 contains the terms of North East's contract with Sub-Zero and Wolf Appliance.

## B. Breach of contract claims

The court turns to analyzing plaintiffs' breach of contract claims. To state a breach of contract claim, a plaintiff must allege: "(1) a contract between the plaintiff and the defendant that creates obligations flowing from the defendant to the plaintiff; (2) failure of the defendant to do what it undertook to do; and (3) damages." *Brew City Redevelopment Grp., LLC v. The Ferchill Grp.*, 2006 WI App 39, ¶ 11, 289 Wis. 2d 795, 714 N.W.2d 582. Defendants contend that plaintiffs did not adequately plead the first and second elements. *See* Dkt. 21, at 4–10.

### 1. Sterling's contracts

Plaintiffs contend that defendants breached their contracts with Sterling in three ways. First, plaintiffs argue that defendants failed to appoint Sterling as a service center and "designat[e] certain geographical areas for parts distribution," which the court understands to mean the Brooklyn territory. Dkt. 26, at 5. Plaintiffs do not cite contractual provisions to support their argument, but these are the only provisions that could apply:

> Appointment as a Factory Authorized Service Center for Sub-Zero and/or Wolf Appliance products is for the period shown on the face of this application, commencing on the date of approval by Sub-Zero or Wolf Appliance[.]
>
> . . .
>
> In order to assure adequate repair service to all Sub-Zero and/or Wolf Appliance customers, each Factory Authorized Service Center is assigned a geographic area within which it must provide timely service.

Dkt. 17, Ex. 1, at 2. But plaintiffs did not allege that Sterling had a contract with defendants regarding the Brooklyn territory. Nor did plaintiffs allege that a preexisting contract covered the Brooklyn territory. Plaintiffs have not alleged facts showing that defendants were contractually obligated to appoint Sterling as a service center for the Brooklyn territory, so their breach of contract claim fails.

Second, plaintiffs contend that defendants breached their agreements with Sterling by referring dealers and customers to new service centers in the New York/New Jersey, Chicago, and Atlanta territories. *See* Dkt. 26, at 5–6. But the express terms of Sterling's contracts permit defendants to take these actions. Sub-Zero and Wolf Appliance's terms of appointment state:

> [C]ustomers requesting service from Sub-Zero or Wolf Appliance will be referred to the Service Center(s) assigned to their geographic areas, but may elect to use any Factory Authorized Service Center. From time to time Sub-Zero and/or Wolf Appliance may consider it advisable to add Factory Authorized Service Centers to serve the expanding Sub-Zero/Wolf Appliance customer base.

Dkt. 17, Ex. 1, at 2. The express terms of Sterling's contracts allow defendants to add new service centers and refer customers to those service centers, so defendants did not breach their contracts with Sterling by doing so.[4]

Third, plaintiffs contend that defendants violated the covenant of good faith and fair dealing by terminating their contracts with Sterling despite the parties' plans for plaintiffs to serve the Brooklyn territory. *See* Dkt. 26, at 6–9. Under Wisconsin law, each contract contains an implied covenant of good faith and fair dealing. *In re Chayka's Estate*, 47 Wis. 2d 102,

---

[4] Plaintiffs did not allege that defendants stopped referring customers to them before their agreements were terminated. Nor did they allege that defendants added service centers to territories in which Sterling had exclusive service rights.

107 n.7, 176 N.W.2d 561, 564 n.7 (1970). The problem with plaintiffs' argument is that they did not adequately allege the existence of a contract regarding the Brooklyn territory, so the covenant of good faith and fair dealing is inapplicable.

If plaintiffs meant to contend that defendants violated the covenant of good faith and fair dealing by terminating Sterling's contracts for other territories, that contention would also fail. Sub-Zero and Wolf Appliance's terms of appointment permit either party to terminate the contract "with or without cause, upon 30 day prior written notice to the other." Dkt. 17, Ex. 1, at 2. The phrase "without cause" is not ambiguous, *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 394 (7th Cir. 2003), and a contracting party cannot rely on the covenant of good faith and fair dealing to undo a contract's express terms, *Beidel v. Sideline Software, Inc.*, 2013 WI 56, ¶ 29, 348 Wis. 2d 360, 842 N.W.2d 240. Plaintiffs fail to state a breach of contract claim based on the covenant of good faith and fair dealing.

### 2. North East's contract

Plaintiffs contend that defendants breached the express terms of their distributorship agreement with North East in three ways. First, plaintiffs contend that defendants breached the contract by delaying shipments of parts that North East had ordered. *See* Dkt. 26, at 10–11. But the express terms of North East's contract grant defendants the power to "refuse to accept any order which [they] determine[] in good faith to be detrimental to [their] best interests." Dkt. 17, Ex. 2, at 3. And plaintiffs admit that Sub-Zero refused the order to "mitigate supply chain disruption and minimize the amount of inventory that will be returned." Dkt. 17, ¶ 135.

Even if defendants breached the agreement by refusing North East's orders in bad faith, plaintiffs did not adequately allege that they suffered damages as a result. Plaintiffs assert that they "incur[red] costs to timely and properly service Sterling and Sub-Zero customers."

*Id.*, ¶ 225. But plaintiffs do not explain what costs they incurred; they do not say, for example, that they lost customers because of the shipping delay. In any event, the allegations in plaintiffs' amended complaint demonstrate that the shipping delay ended the same day it started, so any harm to plaintiffs was negligible. *See id.*, ¶¶ 129–44.

Second, and relatedly, plaintiffs contend that defendants breached their contract with North East by failing to supply it with parts within the timeframes specified in the contract. *See* Dkt. 26, at 10. This contention is a nonstarter. North East's contract does not impose deadlines on defendants to fulfill orders. In fact, the agreement anticipates that delays in deliveries might occur: "All delivery dates are approximate." Dkt. 17, Ex. 2, at 8.

Third, plaintiffs contend that defendants violated the covenant of good faith and fair dealing when they terminated North East's contract. *See* Dkt. 26, at 12–15. But the express terms of North East's contract permitted either party to terminate the contract without cause. North East's contract states:

> Either party may terminate this Agreement pursuant to this section 4.1 in the exercise of its unfettered judgment as to what is in the best interest of its own business, without regard to the interests of the other party. This Agreement neither contains nor implies any covenant which would require good cause for either party to terminate this Agreement; and each party waives any right implied in law or in fact to require that the other party terminate this Agreement only for good cause.

Dkt. 17, Ex. 2, at 3. Plaintiffs cannot use the covenant of good faith and fair dealing to undo the express terms of North East's contract, so their breach of contract claim fails.

## C.  Promissory estoppel claims

Plaintiffs may bring a claim for promissory estoppel if they rely on a promise to their detriment. *See Hoffman v. Red Owl Stores, Inc.*, 26 Wis. 2d 683, 697–98, 133 N.W.2d 267 (1965). To state a promissory estoppel claim, a plaintiff must allege facts showing that

(1) the defendant made a promise, (2) which it "should reasonably expect to induce action or forbearance of a definite and substantial character" by the plaintiff, and (3) which did induce action or forbearance, and (4) that injustice can be avoided only by enforcement of the promise. *Scott v. Savers Prop. & Cas. Ins. Co.*, 2003 WI 60, ¶ 51, 262 Wis. 2d 127, 663 N.W.2d 715. Defendants contend that plaintiffs did not adequately allege the first element. *See* Dkt. 21, at 11–16. Plaintiffs assert that defendants made promises regarding (1) the Brooklyn territory, and (2) a business lease in the New York/New Jersey territory. *See* Dkt. 26, at 15–24.

### 1. Promises regarding the Brooklyn territory

There's not much more to add to the analysis in the context of promissory estoppel regarding the Brooklyn territory. Plaintiffs allege that Sub-Zero told them that Pinnacle would be a "Premier Service Partner" for the Brooklyn territory, and North East would be the territory's parts distributor. Dkt. 17, ¶¶ 64–65. Plaintiffs relied on defendants' promise, and they invested significant resources into the territory to their detriment because of it. *See id.*, ¶ 86. Plaintiffs have stated a claim for promissory estoppel based on these allegations.

But plaintiffs fail to state a claim for promissory estoppel regarding their proposed three-year agreements to serve the Brooklyn territory. Plaintiffs' business plan for the Brooklyn territory "requested 'a 3-year written agreement from the Sub-Zero Group.'" *Id.*, ¶ 76. In April 2021, plaintiffs emailed defendants, asking: "Any news about the 3 year contracts and the timing of when they may happen? Seems good time considering our investment in the territory." *Id.*, ¶ 82. Defendants replied: "3 year contracts are in the future at some point. When? Not for sure." *Id.*, ¶ 83. Plaintiffs argue that defendants' reply shows that they agreed to provide plaintiffs with three-year contracts. *See* Dkt. 26, at 18. To support a promissory estoppel claim, promises must be clear and unequivocal. *See Seater Const. Co., Inc. v. Rawson*

*Plumbing, Inc.*, 2000 WI App 232, ¶ 24, 239 Wis. 2d 152, 619 N.W.2d 293. Defendants' reply is ambiguous and equivocal; defendants say that the timing of three-year contracts is "[n]ot for sure," indicating that the agreements are anything but guaranteed. Plaintiffs cannot rely on defendants' statements to support a claim for promissory estoppel.

### 2.  Promises regarding the lease in the New York/New Jersey territory

Plaintiffs also assert a promissory estoppel claim regarding a long-term building lease in the New York/New Jersey territory. Plaintiffs allege that they were "required by Sub-Zero to have adequate warehouse space to service its customers." Dkt. 17, ¶ 145. To meet this obligation, Sterling subleased warehouse space from Sub-Zero, including a facility in Syosset, New York. In 2020, Sub-Zero vacated the Syosset facility. Sterling says it had to decide whether to stay in the Syosset facility and face increased rent costs or find a new facility. Defendants "actively encouraged" plaintiffs to set up a facility to serve the New York/New Jersey territory, and to remain a Premiere Service Partner. *Id.*, ¶¶ 153–55. Plaintiffs leased a new facility in Melville, New York. Rent for the Melville facility was $5,000 more a month than the Syosset facility, and it "was more space than Sterling needed then or in the foreseeable future." *Id.*, ¶¶ 158–59. Plaintiffs committed to leasing the Melville facility for ten years.

Plaintiffs' promissory estoppel fails because plaintiffs have not identified a promise made by defendants. They say that defendants "actively encouraged" them to secure warehouse space and continue their business relationship in the New York/New Jersey territory. But plaintiffs do not allege that defendants promised plaintiffs that, if they leased the Melville facility, they would remain service partners for ten years. Plaintiffs fail to state a claim for promissory estoppel based on these allegations.

ORDER

IT IS ORDERED that:

1. Defendants Cove Appliance, Inc. and Asko Distribution North America, LLC are DISMISSED.

2. Defendants Sub-Zero, Inc. and Wolf Appliance, Inc.'s motion to dismiss, Dkt. 20, is GRANTED in part and DENIED in part. The motion is DENIED with respect to plaintiffs' promissory estoppel claim regarding defendants' promise that plaintiffs Pinnacle Appliance Care, LLC, and North East Certified Parts Distribution would serve the Brooklyn territory. The motion is GRANTED in all other respects.

Entered January 28, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge